[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 22-13405

Non-Argument Calendar

_____

GREGORY JACK ALMOND,
TERESA ROBERTS ALMOND,

                                        Plaintiffs-Appellees,

*versus*

KEVIN WALKER,
Deputy Sheriff, in his individual capacity,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

D.C. Docket No. 3:19-cv-00175-RAH-KFP

_____

Before JORDAN, BRANCH, and GRANT, Circuit Judges.

PER CURIAM:

After police entered Gregory and Teresa Almond's home in search of drugs, the Almonds sued. They brought many claims against many defendants, but only a narrow part of one claim is before this Court: Officer Kevin Walker's appeal of the denial of summary judgment for a claim alleging that he violated the Almonds' Fourth Amendment rights. We affirm the district court's denial of summary judgment.

**I.**

On January 31, 2018, Randolph County Deputy Sheriff Nathaniel Morrow went to the Almonds' home to serve civil papers.[1] He claimed to have smelled unsmoked marijuana, and he relayed that information to members of the Randolph County Narcotics Unit, including Walker.

The Narcotics Unit then sought a search warrant to enter the Almonds' home. None of the members of the Narcotics Unit claimed to have obtained a written search warrant prior to

---

[1] Because we write only for the parties' benefit, we describe only those portions of the facts and procedural history that are necessary to resolve this appeal and assume the parties' basic familiarity with the undisputed elements of the qualified immunity analysis.

searching the Almonds' home.  Instead, the officers testified that Walker said he obtained a telephonic search warrant from Randolph County District Judge Amy Newsome.  Walker himself testified that Judge Newsome said he had enough for a search warrant and that from "past experiences" he thought he had a telephonic search warrant, but that he did not specifically remember her stating that she was issuing him a search warrant. In a deposition, Judge Newsome said she did not recall this phone call, but she acknowledged that it's possible that the call occurred, and even that it's possible that she told him that he had sufficient probable cause to get a search warrant.  That said, she emphatically denied having issued Walker a search warrant—or, for that matter, having *ever* issued a telephonic search warrant.  At some point, Walker received a paper warrant from Judge Newsome, but some documents suggest it was obtained on the day of the search, while others suggest it was days later.

Based on what they claim to have believed was a telephonic search warrant from Judge Newsome, the Narcotics Unit searched the Almonds' home.  The officers found marijuana, and charges were brought against the Almonds.  These charges, however, were ultimately dismissed on the prosecution's motion.

The Almonds brought this lawsuit.  Their now-operative third amended complaint includes a § 1983 claim against Walker for "Illegal Search and Seizure in Violation of the Fourth Amendment to the United States Constitution."  Prior to discovery, the Almonds appear to have believed that the search of their home

was pursuant to a telephonic warrant; the "factual background" section of their complaint alleges that "[b]ased on Deputy Morrow's alleged smell, a search warrant was obtained via telephone." Even so, they qualified this statement in the body of their Fourth Amendment claim against Walker, which conceded that the defendants "claim to have obtained a search warrant telephonically prior to the raid" but also alleged that there was "no recorded transcript of a warrant being issued" and that the defendants had no "signed warrant or copy of any warrant at the time of the raid."

After discovery, Walker moved for summary judgment. Relying on information revealed in the depositions of Judge Newsome and the officers, the Almonds responded by explicitly arguing for the first time that Walker never received a search warrant. But they never moved to amend their complaint to remove the statement that "a search warrant was obtained" or to more explicitly allege that the search of their home was warrantless. Walker cried foul, saying that the plaintiffs were contradicting the allegations in their own complaint and impermissibly seeking to amend their complaint through their opposition to his summary judgment motion. He also argued that he was entitled to qualified immunity either way.

As to the Almonds' Fourth Amendment claim, the district court denied Walker's motion for summary judgment. It reasoned that the Almonds' argument that there was no warrant was procedurally appropriate because they never changed the nature of

22-13405                Opinion of the Court                5

their claim, and that refusing to consider evidence that arose during discovery would be "single-sighted literalism." On the merits, it determined that there was a genuine issue of material fact as to whether there was a paper warrant prior to the search, that the existence of a telephonic warrant was not supported by the record, that neither the good-faith reliance exception nor the exigent circumstances exception applied, and that Walker was not entitled to qualified immunity. Walker appealed.

## II.

Because Walker's arguments that he was entitled to summary judgment go beyond the sufficiency of the evidence, we have interlocutory jurisdiction to review the district court's denial of qualified immunity. *See English v. City of Gainesville*, 72 F.4th 1151, 1155–56 (11th Cir. 2023). We review orders denying qualified immunity at summary judgment de novo, construing all facts in favor of the non-moving party. *Ireland v. Prummell*, 53 F.4th 1274, 1297 (11th Cir. 2022).

## III.

As before the district court, Walker makes both a procedural and a merits argument. He first argues that the district court erred by considering the possibility that he may not have had a warrant at all when the operative complaint alleged that the search was pursuant to a procedurally defective warrant. He then argues that, in any event, he was entitled to qualified immunity. We reject both arguments.

### A.

We begin with Walker's procedural argument. He does not go so far as to argue that the Almonds are *completely* barred from contradicting their operative complaint in an opposition to summary judgment. Instead, he makes the narrower claim that "only claims and theories of liability that are actually pleaded in the complaint can be considered by the district courts and this Court."

His best case is *Dukes v. Deaton*, 852 F.3d 1035 (11th Cir. 2017). Dukes brought a claim against an officer under a theory of supervisory liability for a Fourth Amendment violation primarily committed by the officer's subordinate. *Id.* at 1045–46. In her complaint, Dukes alleged that the superior officer failed to train his employee, but at summary judgment, she introduced a new theory that the supervising officer also personally participated in the violation. *Id.* at 1046. We held that Dukes's attempt to rely on an "alternative theory of supervisory liability" was "an improper attempt to amend her complaint." *Id.*

But the facts of this case are distinguishable from *Dukes*. That case's holding was an application of the longstanding principle that a plaintiff cannot introduce a new claim in a response to a motion for summary judgment. *See, e.g.*, *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004). In *Dukes*, the theories of liability—one based on a failure to train, and one based on personal participation in a tort—were fundamentally different in kind, turning on a completely different set of alleged facts.

Accordingly, it made sense to treat the two as if they were stating entirely distinct claims.

In contrast, we agree with the district court that the nature of the Almonds' claim against Walker did not fundamentally change. The Almonds consistently alleged that Walker violated their Fourth Amendment rights by entering their home unreasonably. To be sure, their claim became substantially stronger after discovery revealed a genuine dispute of material fact about whether a warrant existed. But it did not fundamentally shift their basic legal allegations against Walker. Indeed, the actual count of the Fourth Amendment claim against Walker—which does not even incorporate the background facts section—is consistent with both a theory that Walker's warrant was not supported by probable cause *and* a theory that he had no warrant at all. The only ground on which we could possibly justify ignoring the evidence that there was no warrant is the stray reference to a warrant being obtained in the background facts section of the complaint. That goes well beyond *Dukes*, and we agree with the district court that it would amount to pointless literalism. So, like the district court, we will not close our eyes to evidence in the record that there may not have been a warrant prior to the search.

### B.

On the merits, Walker's appellate briefing exclusively argues that he was entitled to qualified immunity because the good-faith reliance exception applied in light of his belief that Judge Newsome had given him a telephonic warrant. He insists that, regardless of

whether there was a telephonic warrant, his belief that there was one was reasonable and in good faith.

The fundamental flaw with Walker's argument is that it fails to apply the summary judgment standard. Walker asserts that he reasonably believed that he had a valid telephonic warrant. But at this stage in the litigation, we must make all reasonable inferences about what was said in any phone call between Walker and Judge Newsome against Walker. Doing so, a reasonable factfinder could make factual findings that require judgment against Walker in at least two distinct ways.

First and most straightforwardly, a reasonable factfinder could simply disbelieve Walker's statement that he thought he had a search warrant. If so, then Walker would be liable because he knowingly entered a home without a warrant, a good-faith belief that he had a warrant, or exigent circumstances—something that no one contends is protected by the good-faith reliance exception or qualified immunity. *See, e.g.*, *Hartsfield v. Lemacks*, 50 F.3d 950, 954–55 (11th Cir. 1995). So on that ground alone, summary judgment for Walker is inappropriate at this stage in the proceedings.

Additionally, a reasonable factfinder could conclude that, even if Walker had a good-faith belief that he had a valid warrant, that belief was objectively unreasonable. After all, Judge Newsome emphatically denied issuing a telephonic search warrant, Walker himself testified that he did not recall being explicitly told he had a warrant, and the record suggests that Walker took no steps

resembling Alabama's procedures for receiving a telephonic search warrant. *See* Ala. R. Crim. P. 3.8(b). Indeed, Walker even says that he may have been systematically ignorant of the proper procedures for receiving telephonic warrants. But if that is true, a reasonable factfinder could certainly conclude that such disregard of a basic element of an officer's constitutional duties was unreasonable.

In that case, then —notwithstanding his good-faith belief that he had a valid warrant—Walker still would not be protected by the good-faith reliance exception. Even assuming (without deciding) that the good-faith reliance exception can *ever* apply when no warrant actually exists, the exception does not apply when a warrant is "so facially deficient" that "the executing officers cannot reasonably presume it to be valid." *United States v. Leon*, 468 U.S. 897, 923 (1984). So if the factfinder determines that, given the discrepancies between the phone call with Judge Newsome and the Alabama state procedures for telephonic warrants, the phone call was so far removed from a proper telephonic warrant that no reasonable officer could have presumed a valid warrant existed, then *Leon* would bar the application of the good-faith reliance exception, regardless of Walker's subjective mental state.

As should go without saying, if the good-faith reliance exception does not apply because Walker's beliefs were objectively unreasonable, then any "good-faith" belief Walker may have had was legally irrelevant. Accordingly, the qualified immunity analysis is the same if the factfinder determines that Walker unreasonably believed that he had a warrant as if it determines that Walker did

not believe he had a warrant at all.  In both cases, it is clearly established that an unreasonable, warrantless search of the home without exigent circumstances violates the Fourth Amendment. *See Hartsfield*, 50 F.3d at 954–55.

★      ★      ★

At this stage of the proceedings, Walker is not entitled to qualified immunity.  We **AFFIRM** the district court's denial of his motion for summary judgment**.**